UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
GENERAL ELECTRIC COMPANY,                          :

            Plaintiff/Counterclaim Defendant,     :

                      v.                          :

APR ENERGY PLC,                                    :

            Defendant/Counterclaim Plaintiff.     :          **MEMORANDUM AND ORDER**
--------------------------------------------------------------------X
APR ENERGY HOLDINGS LIMITED, POWER    :          19-CV-3472 (VM) (KNF)
RENTAL OP CO AUSTRALIA LLC, AND
POWER RENTAL ASSET CO TWO LLC,                     :

           Third-Party Plaintiffs,                :

                      v.                          :

GENERAL ELECTRIC COMPANY,                          :

           Third-Party Defendant.                 :
--------------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

General Electric Company ("GE") commenced this action asserting breach of the

October 28, 2013 Master Supply Agreement (the "MSA") against APR Energy plc, which,

together with third-party plaintiffs APR Energy Holdings Limited, Power Rental Op Co

Australia LLC and Power Rental Asset Co Two LLC (collectively "APR"), asserted breach of

the October 22, 2013 Business Transfer Agreement (the "BTA") and the MSA against GE.  GE

alleges that its breach of contract action arises out of APR's "refusal to pay the resale fee it owes

GE for [its] sale of nine (9) TM mobile gas turbine generators," as required under the MSA.  GE

asserts that the amount owed to it is $1,750,000 per unit, for a total of $15,750,000, "before

increasing the amounts by the Annual Inflation Index for a total amount owed of at least

$16,963,394.31."  The MSA contains a provision styled "Governing Law" stating:

1

> This Contract, including but not limited to, the validity, performance and all matters relating to the interpretation and effect of this Contract and all further documents executed pursuant to it, shall be construed and interpreted in accordance with the laws of the State of New York, excluding its conflict of law rules, provided that any provision of such law invalidating any provision of this Contract or modifying the intent of the Parties as expressed in the terms of this Contract shall not apply.  In no event shall this Agreement be governed by, and the Parties expressly disclaim the application of, the United Nations Convention on Contracts for the International Sale of Goods and Services.

APR asserts that its breach of contract causes of action arise out of GE's breach of: (i) warranties in the BTA, by which GE sold its business of providing temporary power generation rental through the use of mobile aero-derivative turbines, namely, Section 3.08, which "warranted that the Sellers had and that the GE entities would have good and unencumbered title to their assets," and Section 5.01, which "warranted that the Sellers and the GE entities would conduct the Business in the ordinary course of business"; and (ii) the MSA warranty, to deliver to APR 15 turbines APR purchased from GE in the condition warranted.  APR alleges that "GE's failure to transfer turbines with good title pursuant to the BTA resulted in APR incurring more than $60 million in damages," and APR "incurred damages related to fixing the defective turbines it purchased from GE under the MSA."  The BTA contains a provision styled "Governing Law and Dispute Resolution," including Section 11.11. (a) stating:

> This agreement and each Ancillary Agreement (and any claims, causes of action or disputes that may be based upon, arise out of or relate hereto or thereto, to the transactions contemplated hereby and thereby, to the negotiation, execution or performance hereof or thereof, or to the inducement of any party to enter herein and therein, whether for breach of contract,  tortious conduct or otherwise and whether predicated on common law, statute or otherwise) shall in all respects be governed by, and construed in accordance with, the Laws of the State of New York, including all matters of construction, validity and performance, in each case without reference to any conflict of Law rules that might lead to the application of the Laws of any other jurisdiction.

Before the Court is GE's motion to compel APR "to produce communications, information, and documents concerning related claims filed by APR against Baker & McKenzie in *APR Energy LLC v. Baker & McKenzie*, No. 2017-CA-05595, Fla. Cir. Ct. (Aug. 31, 2017), and the resolution thereof." The motion is opposed by APR.

## GE'S CONTENTIONS

GE asserts that "in the Baker McKenzie litigation, APR claimed that Baker was responsible for the very same loss it now attempts to pin on GE: the seizure of four power-generating turbines by the receiver of their insolvent Australian lessee." According to GE, APR admitted that Baker McKenzie, APR's counsel in its acquisition of the business that leased the turbines at issue in this action, had recommended filing a security interest in the turbines, but asserted that Baker McKenzie failed to apprise APR adequately of the potential seizure. GE contends that, in its filings in the Baker McKenzie litigation, which was settled, APR quoted extensively and relied heavily on Baker McKenzie's guidance. GE asserts that, in its counterclaim in this action, APR asserts that GE is responsible for the same seizure. According to GE, APR refuses to answer GE's four document and information requests tailored to APR's counterclaim concerning "APR's prior knowledge of the potential seizure, APR's ability to avoid it, how others caused it, and the compensation APR has already received for it." GE's Document Request No. 1 seeks: "All Documents and Communications concerning the Baker McKenzie Litigation, including but not limited to, the outcome of the litigation and any settlement negotiations, settlement agreements and/or discussions." GE's Document Request No. 2 seeks: "All Documents and Communications produced by all parties in the Baker McKenzie Litigation." GE's Document Request No. 3 seeks: "All Documents and Communications concerning any litigation or proceedings APR contemplated, participated in, or initiated against

Baker McKenzie related to the GE Transaction."  GE's Interrogatory No. 11 states: "Identify all agreements entered into by APR, including settlement agreements, related to the Australian Proceedings and/or APR's claims regarding the Forge Turbines, including any such agreements with Baker McKenzie."

GE argues that New York law applies to issues of evidentiary privilege because "the parties agreed that New York law would apply to claims, like APR's counterclaim, that arise out of the BTA," as provided in Section 11.11 of the BTA.  GE asserts that APR's claim that the information sought is privileged is meritless because: (1) "APR voluntarily waived privilege by publicizing [Baker McKenzie's] guidance to the world"; (2) "APR waived privilege by putting [Baker McKenzie's] advice at issue in the Baker McKenzie litigation and this action"; (3) "communications and agreements between adverse parties are not privileged"; and (4) "the relevant considerations weigh in GE's favor."  GE contends that APR waived the privilege by publicizing Baker McKenzie's guidance when it quoted from it, voluntarily and repeatedly, in its pleadings and to news outlets covering the Baker McKenzie litigation.  By its public disclosure of Baker McKenzie's guidance, "APR has relinquished its right to claim privilege over this subject matter: Baker's guidance pertaining to the Forge Turbines and the resulting legal actions in Australia."

GE asserts that APR also waived the privilege by putting Baker McKenzie's guidance at issue in the Baker McKenzie litigation and this action, when it asserted the counterclaim against GE based on an unrelated contract, BTA, "putting the Forge Turbines, its knowledge of any security interests and its decision to proceed in an Australian court at issue in this litigation."  In this action, APR claims that "GE's failure with respect to the Forge Turbines caused damages that exceeded the loss of the $44 million bond" APR posted in the Australian litigation and that

such damages "exceed[] $60 million."  GE maintains that APR prosecuted its malpractice suit against Baker McKenzie on "these same topics" and "now seeks duplicative recovery for the same loss on the same underlying set of facts, all while shielding from discovery the guidance it alone put at issue in its prior action.  This APR may not do.  By placing the subject matter of its own purportedly privileged communications at issue here and in the Baker McKenzie Litigation, 'at issue' waiver has occurred."  According to GE, APR's knowledge regarding security interests in the turbines and whether it needed to file a statement of its own interest as lessor, are relevant to APR's claim that filing such a statement is in the "ordinary course" of business and GE's defenses of waiver, estoppel, unclean hands and failure to mitigate damages, all of which require insight into APR's state of mind.

GE asserts that communications between APR and Baker McKenzie "regarding APR's legal malpractice claim are communications between adverse parties over which there is no privilege."  According to GE, the settlement agreement between APR and Baker McKenzie and the settlement amount are not privileged and they are "relevant to GE's defenses, including set-off or recoupment for any assessed damages."  Moreover, the parties agreed to a confidentiality stipulation under which APR may classify the settlement agreement as warranted.

GE asserts that the volume of requested documents is "modest," its production burden is minimal, and no other source for the requested information exists.  In support of its motion, GE submitted its attorney's declaration with: (1) Exhibit 1, "the Business Transfer Agreement" between GE and APR Energy plc, dated October 22, 2013; (2) Exhibit 2, "the Master Supply Agreement" between GE and APR Energy plc, dated October 28, 2013; (3) Exhibit 3, "the Equipment Sale Agreement" between GE and Global Parts and Products, GmbH and APR Energy Holdings Limited, dated December 31, 2016; (4) "the Registration Number Search

Certificate from a search conducted on the Australian Government's Financial Security Authority website (ppsr.gov.au) on January 7, 2020"; (5) "the Complaint, Filing #61207203, in *APR Energy LLC et al. v. Baker & McKenzie* No. 16-2017-CA-05595, Fla. Cir. Ct. (Aug. 31, 2017) (the 'Baker McKenzie Litigation')"; (6) Exhibit 6, "the February 28, 2018 Affidavit of Steven S. List, Filing #68617621, in the Baker McKenzie Litigation"; (7) Exhibit 7, "Will Robinson, *APR Energy suing law firm for alleged malpractice*, Jacksonville Business Journal dated December 4, 2017"; (8) Exhibit 8, "Monika Mesa, *Florida Company Sues Baker McKenzie for Malpractice*, Daily Business Review, dated November 17, 2017"; and (9) Exhibit 9, "the June 29, 2018 Transcript of Proceedings, Filing #83995441, in the Baker McKenzie Litigation."

## APR'S CONTENTIONS

APR contends that: (1) "GE seeks documents properly excluded from the scope of discovery"; (2) "APR has done nothing to create an at-issue waiver in this case"; (3) "the law does not allow GE to put APR's privileged information 'at issue' unilaterally"; (4) "the documents GE seeks lack the necessary relevance"; (5) "applying Florida and Illinois law, any at-issue waiver in the Florida suit or Illinois mediation does not justify subject matter waiver in this case"; and (6) "even under New York law, any privileged documents disclosed in the Florida suit do not justify the production of the withheld documents."  APR argues:

> In diversity actions, disputes regarding attorney-client privilege are governed by state law.  Fed. R. Evid. 501; *Conti v. Doe*, No. 17-CV-9268 (VEC) (RWL), 2019 WL 5198882, at *2 (S.D.N.Y. Oct. 1, 2019).  To determine which state's privilege law applies, New York choice of law rules dictates that the Court apply the laws of the state with the most significant relationship to the communications at issue.  *Id*. at *2.

APR asserts that the requested documents are withheld properly because they "are either privileged attorney-client communications, attorney work product, or contractually barred from disclosure."  The documents that APR is withholding consist of:

(a) documents and communications between APR (or its agents) and its Florida counsel for purposes of rendering legal advice regarding the Baker McKenzie Litigation;

(b) documents and communications between APR (or its agents) and Baker McKenzie for purposes of rendering legal advice as APR's Australian counsel;

(c) documents and communications between Baker McKenzie attorneys and/or staff in rendering legal advice to APR as APR's Australian Counsel; and

(d) APR and its counsel's mental impressions and legal theories in contemplation of, participation in, and/or preparation for litigation.

APR asserts that it has not put any advice from its attorneys at issue in this case and has not relied on or asserted privileged information in support of its counterclaims or defenses. According to APR, "GE is attempting to use its own defense to put APR's privileged information 'at issue,'" which "is insufficient to require disclosure of APR's privileged information. Applying the appropriate state's privilege law, the documents that APR is withholding remain protected despite any at-issue waiver that may have occurred in the Baker McKenzie litigation."

APR contends that in its prior litigation against its counsel, Baker McKenzie, Baker McKenzie produced a modest number of documents to APR to facilitate briefing a jurisdictional issue, but APR did not produce any documents to Baker McKenzie. Thereafter, the parties agreed to mediation, during which no documents were produced, except exhibits included in the parties' mediation statements and documents referenced during the mediation. APR contends that the Baker McKenzie litigation was different from this case, involved different counsel and claims, and the issue was whether Baker McKenzie breached its duty as APR's counsel, which is not relevant to whether GE breached its duties under the agreement it had with APR. Moreover, APR is not seeking double recovery of damages. APR asserts that "Baker McKenzie is willing to agree to allow APR to disclose any settlement agreement so long as GE agrees to treat it and its terms confidentially."

APR maintains that any "at-issue" waiver that may have occurred in the Florida Baker McKenzie litigation or mediation conducted in Illinois should not be decided under New York law.  Under Florida law, any "at-issue" waiver that occurred in Florida is limited solely to that legal malpractice action, and any mediation communications from the Illinois mediation are privileged under the Uniform Mediation Act, adopted by Florida and Illinois, as well as the Florida Mediation Confidentiality and Privilege Act.  APR asserts that GE seeks documents that are excluded properly from the scope of discovery because they are covered by "attorney-client privilege, attorney work product, the mediation privilege, or contractually barred from disclosure."  Moreover, only a fraction of the withheld documents was produced in the Baker McKenzie litigation.

According to APR, its allegations against GE "are based solely on the actions of GE and GE's failure to fulfill its obligations memorialized in Sections 3.08 and 5.01(a) of" the parties' agreement, and APR does not make any reference in this case to any advice from its counsel. Moreover, GE cannot create an "at-issue" waiver unilaterally through its own asserted theories of the case, including raising the possibility of bad faith, as it is not a holder of privilege.  GE's defenses are baseless because "they require GE to show that it was unaware that it had not perfected its security interest or that it was failing to provide good title and at the same time GE somehow relied on APR for the accuracy of GE's own representations and warranties," which is unreasonable and "unsupported by any of GE's allegations."

APR contends that "applying Florida and Illinois law, any at-issue waiver in the Florida suit or Illinois Mediation does not justify subject matter waiver in this case."  APR contends that any "at-issue" waiver that may have occurred in the Florida suit is not subject to New York law because it did not arise under the agreement between GE and APR; rather, it is subject to Florida

law, which does not provide for waiver of the attorney-client privilege in a legal malpractice action.

According to APR, even if New York law applied in determining the scope of any waiver in the Florida litigation or Illinois mediation, such waiver does not justify ordering APR to produce documents, and GE cannot show any prejudice from failing to receive such documents. APR asserts that, in a situation where GE "seeks documents far beyond those actually disclosed publicly, or even produced, in the Florida Suit and Illinois Mediation," New York courts "will limit any waiver of privilege to the actual privileged information publicly disclosed."  Since APR agreed to produce the pleadings from the Florida litigation, which include any privileged documents APR disclosed publicly, "the Court should not find subject matter waiver based on any documents disclosed in the Florida Suit or Illinois Mediation," and GE's motion should be denied.  In support of its opposition to the GE's motion, APR submitted its attorney's declaration with: (1) Exhibit A, "the Duval County Circuit Court's Order on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction"; (2) Exhibit B, "the Duval County Circuit Court's Order on Defendant's Motion to Dismiss on the Basis of Forum Non Conveniens"; (3) Exhibit C, "Defendant's Notice of Appeal, dated December 13, 2018"; and (4) Exhibit D, "Plaintiffs' Notice of Appeal, dated January 16, 2019."

The Court directed APR to file its privilege log and provide to the Court the documents it asserts it is withholding based on privilege, for in camera review.  APR filed a letter explaining that "approximately 35,000" documents exist responsive to "GE's Second RFP Nos. 1, 2, and 3 that APR asserts to be privileged."  Thereafter, the Court directed that APR submit for in camera review, no more than 30 pages of documents proportionally representative of the documents responsive to each of GE's document requests to which privilege is claimed in APR's privilege

log.  APR filed its privilege log, consisting of 1,948 pages with 12,688 entries, and submitted 30

pages of documents for the Court's in camera review, claiming attorney-client privilege

("ACP"), work-product protection ("WP") and mediation privilege ("MP") and corresponding to

the following privilege log entry numbers and GE's document requests: (a) 33 (WP, ACP), 253

(WP), 257 (WP), 768 (WP, ACP), 812 (WP, ACP), 917 (WP), 3860 (WP, ACP) and 11,094

(MP, WP), responsive to Document Request No.2; (b) 10788 (WP, ACP), 11095 (MP, WP),

11472 (ACP, WP), 12575 (MP, WP) and 12683 (WP, ACP), responsive to Document Request

Nos. 1 and 3; and (c)12684 (WP), responsive to Document Request Nos. 1, 2 and 3.

## GE'S REPLY

GE contends that APR does not dispute that it quoted extensively from Baker

McKenzie's legal guidance in its filings and it does not dispute that its counsel's guidance was

"at issue" in the Baker McKenzie litigation, in which APR and Baker McKenzie were

adversaries.  Furthermore, APR does not assert that producing the requested documents poses

any undue burden or that it is disproportionate to the needs of the case.  APR "provides no basis

for its refusal even to simply identify documents in response to GE's Interrogatory No. 11."  GE

asserts that New York law regarding disclosure of privileged information in a judicial setting,

such as the Baker McKenzie litigation, applies because Baker McKenzie's "guidance regarding

the exact issue at the heart of APR's pending counterclaim" is relevant.  Moreover, "[w]hile New

York law governs this privilege dispute, … a voluntary disclosure of privileged information also

results in a waiver under Florida law" and, apart from asserting that communications exchanged

in the Illinois mediation are protected by a Florida statute, "APR offers zero Florida authority" in

support of its argument that voluntary disclosure of privileged information does not result in a

waiver under Florida law.

GE asserts that, "[t]hough APR rightly acknowledges that New York choice-of-law principles govern, . . . it self-servingly overlooks their controlling rule: that the parties' contractual choice of law must be respected."  Since the parties chose New York law to govern their agreements, New York law applies to this privilege dispute.  GE maintains that even if Florida law applied, Florida courts recognize that in a legal malpractice suit voluntary disclosure of privileged information constitutes a waiver of the attorney-client privilege.  GE asserts that APR does not dispute that communications between adverse parties are discoverable.  Since New York did not adopt the Uniform Mediation Act, mediation communications are discoverable.  GE contends that, even if Illinois law applied, it protects only statements made during a mediation or for purpose of mediation, not the underlying documents presented during the mediation or attached as exhibits to the parties' mediation statements.

## LEGAL STANDARD

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  Motions to compel under Fed. R. Civ. P. 37 "are entrusted to the sound discretion of the district court."  U.S. v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

### *Trial Preparation Materials or Work-Product Protection*

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

> Fed. R. Civ. P. 26(b)(3)(A).

"[F]ederal law governs the applicability of the work product doctrine in all actions in federal court." Calabro v. Stone, 225 F.R.D. 96, 98-99 (E.D.N.Y. 2004) (citation omitted). "A party waives the work product protection by taking actions inconsistent with this its purpose, such as disclosing work product to its adversary, or by placing privileged documents 'at issue' in a litigation." New York Times Co. v. U. S. Dep't of Justice, 939 F.3d 479, 494 (2d Cir. 2019) (citations omitted).

### *Claiming Privilege or Trial-Preparation Materials*

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

> Fed. R. Civ. P. 26(b)(5)(A).

### *Choice of Law*

"A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012). "Under New York law, 'courts will generally enforce choice-of-law clauses,' because 'contracts should be interpreted so as to effectuate the parties' intent.'" AEI Life LLC v.

Lincoln Benefit Life Co., 892 F.3d 126, 132 (2d Cir. 2018) (quoting Ministers & Missionaries

Benefit Bd. v. Snow, 26 N.Y.3d 466, 470, 25 N.Y.S.3d 21, 23 (2015)).

In this action, commenced in a federal court in New York based on diversity jurisdiction,

MSA and BTA, the contracts at issue in this action, each contains a choice-of-law clause

providing for New York law to be the governing law.  The validity of the parties' choice-of-law

clauses in the MSA and the BTA is not contested.  Thus, New York law governs the claims and

defenses in this action.

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state

law supplies the rule of decision."  Fed. R. Evid. 501.  "It is not contested that, in a diversity

case, the issue of privilege is to be governed by the substantive law of the forum state." Dixon v.

80 Pine St. Corp., 516 F.2d 1278, 1280 (2d Cir. 1975).  Since New York law governs claims and

defenses in this action and New York is the forum state, the issue of privilege in this action is

governed by New York law.

***Mediation Privilege***

"New York has not adopted [the Uniform Mediation Act]," and New York courts decline

to apply "the confidentiality provisions in the Uniform Mediation Act as a matter of public

policy."  Hauzinger v. Hauzinger, 43 A.D.3d 1289, 1290, 842 N.Y.S.2d 646, 647 (App. Div. 4th

Dep't 2007).  "When material does not constitute evidence of an offer of settlement, but rather

constitutes factual admissions made during settlement negotiations, the admissions are not

privileged unless it is expressly stated that the admissions are 'without prejudice.'"  Cutrone v.

Gaccione, 210 A.D.2d 289, 291, 619 N.Y.S.2d 758, 760 (App. Div. 2d Dep't, 1994) (citation

omitted).

***Attorney-Client Privilege under New York Law***

"The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship." Ambac Assurance Corp. v. Countrywide Home Loans, Inc., 27 N.Y.3d 616, 623, 36 N.Y.S.3d 838, 842 (2016) (citation omitted). "The privilege is of course limited to communications—not underlying facts" and "[t]he communication itself must be primarily or predominantly of a legal character." Spectrum Sys. Int'l Corp. v. Chemical Bank, 78 N.Y.2d 371, 377-78, 575 N.Y.S.2d 809, 814 (1991) (citations omitted). "The party asserting the privilege bears the burden of establishing its entitlement to protection" and "that the privilege was not waived." Ambac Assurance Corp., 27 N.Y.3d at 624, 36 N.Y.S.3d at 843 (citation omitted).

***Waiver of Attorney-Client Privilege under New York Law***

"[A] client waives the privilege if a communication is made in confidence but subsequently revealed to a third party." Ambac Assurance Corp., 27 N.Y.3d at 624, 36 N.Y.S.3d at 843 (citation omitted). "'At issue' waiver of privilege occurs where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information." Deutsche Bank Trust Co. of Americas v. Tri-Links Inv. Trust, 43 A.D.3d 56, 63, 837 N.Y.S.2d 15, 23 (App. Div. 1st Dep't 2007) (citation omitted). The "at issue" waiver "reflects the principle that privilege is a shield and must not be used as a sword (*see McKinney v. Grand St., Prospect Park & Flatbush R.R.,* 104 N.Y. 352, 355, 10 N.E. 544 [1887]; *Matter of Farrow v. Allen,* 194 A.D.2d 40, 45–46, 608 N.Y.S.2d 1 [1993] )." American Re-Insurance Co.

v. U.S. Fidelity & Guaranty Co., 40 A.D.3d 486, 492, 837 N.Y.S.2d 616, 622 (App. Div. 1st Dep't 2007).

"The New York Court of Appeals has adopted the Second Circuit's view that 'to what extent waiver has occurred is inherently factual and turns on case-by-case considerations of fairness.'" Leviton Mfg. Co. v. Greenberg Traurig LLP, No. 09 Civ. 8083, 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010) (citing People v. Kozlowski, 11 N.Y.3d 222, 246, 869 N.Y.S.2d 848, 863 (2008)).

> Like the Second Circuit, New York courts will not find an at issue waiver merely because privileged information is relevant to the issues being litigated; "[r]ather, at issue waiver occurs when the party has asserted a claim or defense that he intends to prove by use of the privileged materials," or, where rather than being merely relevant, "the privileged documents are indispensable to a party's claims or defenses."

> Id. (citations omitted).

## APPLICATION OF LEGAL STANDARD

### Relevance

GE does not challenge APR's privilege log, and APR does not assert that its privilege log contains any errors. Despite withholding documents listed in the privilege log based on the assertion of privilege and work-product protection, pursuant to Fed. R. Civ. P. 26(b)(5)(A), APR claims in its opposition to the motion that the documents requested by GE are not "relevant to this case." The APR's claim is rejected as meritless, because only: (a) relevant information is discoverable pursuant to Fed. R. Civ. P. 26(b)(1); and (b) discoverable information may be withheld based on privilege or work-product protection, pursuant to Fed. R. Civ. P. 26(b)(5)(A). The Court finds that APR waived any objections based on relevancy with respect to documents listed on its privilege log in connection with the information GE requested in its Document Request Nos. 1, 2 and 3 and Interrogatory No. 11. Thus, APR's objections to GE's Document

request Nos. 1, 2 and 3 and Interrogatory No. 11, based on the ground of relevancy, are overruled.

### Interrogatory No. 11

APR failed to: (i) identify any entry in its privilege log that is responsive to GE's Interrogatory No. 11; (ii) oppose GE's contention that identification of APR's agreements does not reveal information that would be protected from disclosure on privilege grounds; and (iii) make arguments, in its opposition to the motion, concerning any other grounds for not responding to GE's Interrogatory No.11.  Accordingly, all APR's objections to GE's Interrogatory No. 11, including on the grounds of privilege, are overruled.

### Mediation Privilege

APR's privilege log indicates that APR is withholding documents based on a mediation privilege.  Since New York has not adopted the Uniform Mediation Act, and no mediation privilege exists under New York law, which governs this action and the instant privilege dispute, see Hauzinger, 43 A.D.3d at 1290, 842 N.Y.S.2d at 647, APR's objections to GE's Document Request Nos. 1, 2 and 3, based on a mediation privilege, are overruled.

### Settlement Agreement and Settlement Amount

GE asserts that the settlement agreement between APR and Baker McKenzie and the settlement amount are not privileged and they are "relevant to GE's defenses, including set-off or recoupment for any assessed damages."  In its opposition to the motion, APR does not: (a) argue that privilege applies to the settlement agreement between APR and Baker McKenzie and the settlement amount; (b) refute GE's assertions, that "Baker McKenzie is willing to agree to allow APR to disclose any settlement agreement so long as GE agrees to treat it and its terms

confidentially"; and (c) assert that the settlement agreement between APR and Baker McKenzie and the settlement amount are subject to any confidentiality term or order.

In the cause of action against GE respecting the BTA breach, APR seeks "damages that exceed the loss of the $44 million bond," "lost revenue while Forge's receivers had possession of the Forge Turbines," "interest expenses associated with the bond" and "legal fees" APR incurred. These damages are substantially similar to the damages APR sought in its legal malpractice cause of action against Baker McKenzie in the Florida litigation, namely, "payment of the US $44 million bond and associated costs, loss of rental profits, attorney's fees incurred and paid in order to protect their interests, damages to reputation, and diminution of company value." In its answer to APR's counterclaim, GE asserted various defenses, including "set-off or recoupment for any damages assessed against it." Although GE asserts, in a conclusory fashion, that the settlement agreement and the settlement amount are "relevant to GE's defenses, including set-off or recoupment for any assessed damages," GE only identified and explained the relevancy of the settlement agreement and the settlement amount to its "set-off or recoupment" defense. Thus, the Court finds that the settlement agreement between APR and Baker McKenzie in the Florida action and the settlement amount, but not communications in connection with the settlement agreement and the settlement amount, are relevant solely to GE's "set-off or recoupment for any assessed damages" defense. The Court finds that APR failed to show that the settlement agreement between APR and Baker McKenzie and the settlement amount constitute privileged information; thus, they must be disclosed.

**Communications Between Adverse Parties**

GE asserts, in a conclusory fashion, that "communications" between APR and Baker McKenzie "regarding APR's legal malpractice claim are communications between adverse

parties over which there is no privilege," and "[t]hese communications must be produced to GE," making citation to Spectrum Sys. Int'l Corp.  GE does not identify any specific "communications" that it asserts "must be produced to GE."

In Spectrum Sys. Int'l Corp., the plaintiff moved to compel the defendant to produce certain documents pertaining to the defendant's internal investigation and the defendant asserted that "the documents were protected from disclosure by the attorney-client privilege, by the attorney work-product doctrine, and as material prepared in anticipation of litigation."  Spectrum Sys. Int'l Corp., 78 N.Y.2d at 374-75, 575 N.Y.S.2d at 812.  The issue in Spectrum Sys. Int'l Corp. was "whether a report prepared by [the defendant's] specially retained outside counsel is privileged and therefore immune from discovery." Id. at 375, 575 N.Y.S.2d at 812.  The court held that the entire investigative report was protected by the attorney-client privilege because "the communication was primarily and predominantly of a legal character."  Id. at 379, 575 N.Y.S.2d at 815.  Thus, Spectrum Sys. Int'l Corp. does not support GE's contention that communications between APR and Baker McKenzie "regarding APR's legal malpractice claim are communications between adverse parties over which there is no privilege" because the fact that communications are between adverse parties alone is not determinative of the existence or the absence of the attorney-client privilege; rather, "whether a particular document is or is not protected is necessarily a fact-specific determination."  Id. at 378, 575 N.Y.S.2d at 814. Accordingly, GE's unsupported, conclusory assertion that unidentified "communications" between APR and Baker McKenzie "regarding APR's legal malpractice claim are communications between adverse parties over which there is no privilege," is rejected as unsupported and meritless.

*Work-Product Protection*

GE does not challenge work-product protection asserted by APR in its privilege log, as it does not mention work-product protection or make any arguments based on it in its memorandum of law.  Accordingly, the Court sustains APR's objections to GE's Document Request Nos. 1, 2 and 3 based on the work-product protection.

*Attorney-Client Privilege*

Other than making an unsupported, conclusory assertion that unidentified "communications" between APR and Baker McKenzie are not privileged based solely on the adverse status of the parties in the Florida litigation, GE does not contest otherwise the application of the attorney-client privilege asserted by APR in its privilege log; rather, GE argues that APR waived the privilege in two ways, by: (1) "publicizing" Baker McKenzie's  guidance "to the world"; and (2) placing Baker McKenzie's advice at issue in the Florida litigation and this action.

*Attorney-Client Privilege Waiver*

Although in its memorandum of law GE makes what appears to be two arguments concerning APR's privilege in connection with the Baker McKenzie litigation, namely, that APR waived its privilege by (i) disclosing privileged information voluntarily "in its public proceedings and to news outlets covering the litigation," and (ii) putting Baker McKenzie's advice at issue in the Baker McKenzie litigation, APR's voluntary disclosure of privileged information in the malpractice action against Baker McKenzie is the same as the "at issue" waiver in the malpractice action.  The news outlets' reports about the Baker McKenzie litigation are not pre-litigation, extrajudicial disclosures of privilege information that may be subject to the implied waiver of privilege.  See In re Von Bulow, 828 F.2d 94, 102 (2d Cir. 1987) (holding

19

"that the extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communication.").  Thus, GE's argument is one, namely, that APR placed at issue Baker McKenzie's guidance, triggering subject-matter waiver, in both the Baker McKenzie litigation and this action.  APR does not contest that it placed at issue Baker McKenzie's advice in the Baker McKenzie litigation; rather, it argues that it has not placed at issue Baker McKenzie's advice in this action and GE cannot create an at-issue waiver through its own asserted theories of the case or by raising the possibility of bad faith.

APR has not made any claims or asserted any defenses in this action that APR "intends to prove by use of the privileged materials," and the privileged documents are not "indispensable" to the claims and defenses in this action.  Leviton Mfg. Co., No. 09 Civ. 8083, 2010 WL 4983183, at *4.  Although GE makes the conclusory assertion that APR has placed Baker McKenzie's advice at issue in this action, it does not identify any parts of APR's claims or defenses in which APR relies on privileged matter.

GE makes no citation to any binding authority for the proposition that APR's at-issue waiver effected in the prior Baker McKenzie malpractice action, to which GE was not a party, binds APR in this subsequent breach of contract action, in which APR does not make any claims or assert any defenses based on the privileged matter.  GE relies on quotes from Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 479 (S.D.N.Y. June 3, 1993), stating that "waiver will be found even if the disclosure took place in a forum other than the lawsuit in which the waiver issue is raised," and Urban Box Office Network, Inc. v. Interfase Managers, L.P., No. 01Civ.8854, 2004 WL 2375819, at *3, (S.D.N.Y. Oct. 21, 2004) stating that "voluntary disclosure in one case waives the privilege with respect to the disclosed communications in all

subsequent cases. *See In re Steinhardt Partners,* 9 F.3d at 235; *Bowne of N.Y. City, Inc. v. AmBase Corp .,* 150 F.R.D. 465, 478-80 (S.D.N.Y.1993)."

The court in <u>Urban Box Office Network, Inc.</u> relied on <u>Bowne of New York City, Inc.</u> and <u>In re Steinhardt Partners, L.P.</u>, 9 F.3d 230 (2d Cir.1993).  The court in <u>Bowne of New York City, Inc.</u> relied, for the general proposition that once the privilege is waived in a judicial or extrajudicial forum its effect is permanent, unlimited and binding on the privilege holder in any subsequent judicial forum regardless of the parties involved or the claims and defenses asserted by the privilege holder in the subsequent action, on Second Circuit cases involving extrajudicial disclosures prior to litigation in which privilege was asserted respecting those extrajudicial disclosures, namely, <u>In re John Doe Corp.</u>, 675 F.2d 482, 488 (2d Cir. 1982) (involving the waiver of privilege by disclosing to a third-party a report prepared for the defendant prior to the government's presentation of evidence before a grand jury) and <u>In re Von Bulow</u>, 828 F.2d at 101 (involving the waiver of privilege by the publication of a book by a party's former attorney). The Court does not read the Second Circuit authorities as broadly as to permit the scope of the privilege waiver stated by the court in <u>Bowne of New York City, Inc.,</u> or the imposition in the instant action against GE – in which APR, the privilege holder, has not asserted any claims or defenses based on privilege – of a binding privilege waiver derived from APR's prior action against Baker McKenzie.

GE also relies on <u>In re Steinhardt Partners, L.P.,</u> in which the issue was "whether disclosure of attorney work product in connection with a government investigation waives the privilege in later civil discovery."  9 F.3d at 233.  The court stated:

> Common sense and the practicalities of litigation define the limits of the work product doctrine.   Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears. Courts therefore accept the waiver doctrine as a limitation on work product

> protection.  The waiver doctrine provides that voluntary disclosure of work product
> to an adversary waives the privilege as to other parties.

Id. at 235 (internal citation omitted).

The court declined "to adopt a *per se* rule that all voluntary disclosures to the government waive

work product protection. Crafting rules relating to privilege in matters of governmental

investigations must be done on a case-by-case basis," concluding:

> At the time of the submission of the memorandum to the Enforcement Division, the
> SEC and Steinhardt stood in an adversarial position. Steinhardt's voluntary
> submission of the memorandum to the Enforcement Division waived the
> protections of the work product doctrine as to subsequent civil litigants seeking the
> memorandum from Steinhardt.

Id. at 236.

As indicated above, GE does not challenge the work-product protection asserted by APR in its

privilege log; thus, In re Steinhardt Partners, L.P., involving a pre-litigation extrajudicial

disclosure asserted to be protected by the work-product doctrine, is inapposite.

In its reply, GE quotes the court in Robbins & Myers, Inc. v. J.M. Huber Corp., 274

F.R.D. 63, 94 (W.D.N.Y. 2011), stating that "it is also fundamental that voluntary disclosure by

or on behalf of a party during judicial proceedings may waive the privilege as to the disclosed

information as well as all the otherwise privileged information relating to the same subject-

matter of the disclosed information" and citing In re Von Bulow, 828 F.2d at 101-02.  However,

Robbins & Myers, Inc. does not aid GE because, unlike in this action, it involved the waiver of

privilege by a voluntary disclosure made by the plaintiff's witness in the same litigation in which

waiver is asserted; thus, Robbins & Myers, Inc. is inapposite.  Similarly, GE's reliance on the

quote from In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 469 (S.D.N.Y. 1996), "that

disclosure in a 'judicial' setting does trigger a waiver by implication for related and otherwise

22

privileged materials," is not helpful because, unlike here, In re Kidder Peabody Sec. Litig. involved an extrajudicial disclosure "functionally indistinguishable from the book publication by von Bulow," id.; thus, In re Kidder Peabody Sec. Litig. is inapposite.

As APR points out, GE cannot put APR's privileged materials at issue "by simply raising the possibility of bad faith."  See Deutsche Bank Trust Co. of Americas, 43 A.D.3d at 67, 837 N.Y.S.2d at 26 ("If the privilege could be deemed waived by nothing more than the theoretical possibility of an issue concerning the settlement's good faith (and that is all that Tri–Links offers), a similar waiver would have to be implied in every case in which the bad faith of the plaintiff would constitute a defense.").  Having placed no privileged matter at issue in this action, the Court finds that APR did not waive its attorney-client privilege; thus, APR's objections to GE's Document Request Nos. 1, 2 and 3, based on the attorney-client privilege, are sustained.

## CONCLUSION

For the foregoing reasons, GE's motion to compel, Docket Entry No. 39, is denied in part and granted in part.

Dated:   New York, New York
         April 29, 2020                          SO ORDERED:

                                                 _Kevin Nathaniel Fox_____
                                                 KEVIN NATHANIEL FOX
                                                 UNITED STATES MAGISTRATE JUDGE