UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GENERAL ELECTRIC COMPANY,** <br><br> Plaintiff/Counterclaim Defendant, <br><br> – against – <br><br> **APR ENERGY PLC,** <br><br> Defendant/Counterclaim Plaintiff. <br><br> **APR ENERGY HOLDINGS LIMITED, POWER RENTAL OP CO AUSTRALIA LLC, AND POWER RENTAL ASSET CO TWO LLC,** <br><br> Third-Party Plaintiffs, <br><br> – against – <br><br> **GENERAL ELECTRIC COMPANY,** <br><br> Third-Party Defendant. | Civ. No.: 1:19-cv-03472-VM-KNF |

**MEMORANDUM OF LAW IN SUPPORT OF GE'S MOTION TO COMPEL**

**TABLE OF CONTENTS**

                                                                                      **Page**

I.     PRELIMINARY STATEMENT ..................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................................... 2

         a.       Case Background ................................................................................................. 2

         b.       The Baker McKenzie Litigation ........................................................................... 3

         c.       GE's Discovery Requests and First Motion to Compel ........................................ 4

III.   LEGAL STANDARD ....................................................................................................... 5

IV.   ARGUMENT .................................................................................................................... 6

         a.       APR Waived Any Attorney Client Privilege by Providing the Disputed
                 Documents to the Mediator ................................................................................... 6

         b.       APR Waived Any Work Product Privilege by Providing the Disputed
                 Documents to the Mediator ................................................................................... 8

         c.       The Relevant Considerations Weigh in GE's Favor ............................................ 10

V.    CONCLUSION ................................................................................................................ 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*,
   No. 18-CV-126 (RA) (KHP), 2019 WL 2482356 (S.D.N.Y. June 14, 2019) .....................9, 10

*Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*,
   27 N.Y.3d 616 (N.Y. 2016) ........................................................................................................8

*Bank of Am., N.A. v. Terra Nova Ins. Co.*,
   212 F.R.D. 166 (S.D.N.Y. 2002) ...............................................................................................9

*Caruso v. Grace*,
   No. 11 CIV. 2353 SAS KNF, 2012 WL 2497274 (S.D.N.Y. June 27, 2012) ..........................8

*Cellco P'ship d/b/a Verizon Wireless v. Nextel Commc'n, Inc.*,
   No. M8–85, Civ.A. 03–725, 2004 WL 1542259 (S.D.N.Y. July 9, 2004) ..........................9, 10

*In re Copper Mkt. Antitrust Litig.*,
   200 F.R.D. 213 (S.D.N.Y. 2001) .............................................................................................10

*Delta Fin. Corp. v. Morrison*,
   820 N.Y.S.2d 745 (N.Y. Sup. Ct. 2006) ...................................................................................8

*Lynbrook Glass & Architectural Metals, Corp. v. Elite Assocs., Inc.*,
   238 A.D.2d 319 (N.Y. App. Div. 1997) ...................................................................................7

*Medinol, Ltd. v. Bos. Sci. Corp.*,
   214 F.R.D. 113 (S.D.N.Y. 2002) ...............................................................................................9

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   229 F.R.D. 441 (S.D.N.Y. 2004) ...............................................................................................9

*Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
   No. 15-Civ.-0293, 2016 WL 3906712 (S.D.N.Y. July 14, 2016) ...................................5, 6, 10

*Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*,
   No. M8–85, 1999 WL 378337 (S.D.N.Y. June 10, 1999) .....................................................6, 7

*NYP Holdings, Inc. v. McClier Corp.*,
   No. 601404/04, 2007 WL 519272 (N.Y. Sup. Ct. 2007) ...........................................................7

*People v. Osorio*,
   75 N.Y.2d 80 (N.Y. 1989) .......................................................................................................6, 7

*People v. PriceWaterhouseCoopers, LLP*,
    150 A.D.3d 578 (N.Y. App. Div. 2017) ..................................................................................7

*In re Pfizer Inc. Sec. Litig.*,
    No. 90 Civ. 1260, 1993 WL 561125 (S.D.N.Y. Dec. 23, 1993)................................................9

*Ross v. UKI Ltd.*,
    No. 02 CIV. 9297 WHPJCF, 2003 WL 22319573 (S.D.N.Y. Oct. 9, 2003)............................6

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
    No. 14-Civ.-9792, 2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015).........................................5, 10

*Stroh v. Gen. Motors Corp.*,
    213 A.D.2d 267 (N.Y. App. Div. 1995) ...................................................................................7

*United States v. Adlman*,
    134 F.3d 1194 (2d Cir. 1998)....................................................................................................8

*United States v. Sanders*,
    211 F.3d 711 (2d Cir. 2000)......................................................................................................5

*Verschoth v. Time Warner*,
    No. 00 Civ. 1339(AGS), 2001 WL 546630 (S.D.N.Y. May 22, 2001) ....................................9

*Vill. of Kiryas Joel Loc. Dev. Corp. v. Ins. Co. of N. Am.*,
    No. 90 CIV. 4970 (JFK), 1992 WL 8207 (S.D.N.Y. Jan. 16, 1992) ........................................7

**Other Authorities**

Fed. R. Civ. P. 26........................................................................................................5, 6, 10

Fed. R. Civ. P. 37.................................................................................................................5

Local Rule 5.1 .....................................................................................................................4

I. **PRELIMINARY STATEMENT**

This Motion seeks to enforce this Court's April 29, 2020 Order recognizing that "no mediation privilege exists under New York law." Dkt. No. 72 at 16 ("Apr. 29 Order"). At issue is APR's refusal to produce, under the guise of privilege and work product protection, twenty-eight (28) documents that APR admits it voluntarily provided to a neutral, third-party mediator.

As this Court is aware, these documents, which relate to claims APR brought in *APR Energy LLC v. Baker & McKenzie*, No. 16-2017-CA-05595, Fla. Cir. Ct. (Aug. 31, 2017) (the "Baker McKenzie Litigation"), are squarely relevant to the present dispute. In one of its counterclaims in this action, APR now claims GE is responsible for the very same loss it has already pinned on, and received significant compensation from, Baker & McKenzie ("Baker") in the Baker McKenzie Litigation: the seizure of four power-generating turbines by the receiver of their insolvent Australian lessee. In that litigation, APR admitted that Baker recommended APR file a security interest in the turbines, and further contended that by contesting the seizure's property in Australia, rather than in a separate action in the United Kingdom, APR suffered increased damages. Now, in this action, APR asserts by counterclaim that GE is responsible for the same seizure and resulting damages. As this Court has already determined, *see* Apr. 29 Order at 15-16, the documents subject to this Motion are directly relevant to the matters in issue, including APR's failure to mitigate damages by neglecting to file a security interest in the turbines and by pursuing a legal action in Australia.

This Court has already concluded that APR's attempt to block disclosure of certain documents on the basis of a mediation privilege fails under New York law. Now, APR erroneously claims that it can continue to withhold documents it has already been ordered to produce on the basis of attorney client privilege, work product protection, or both. APR's position must be rejected, as APR waived any such privilege when it provided the documents at

issue to the mediator, a third party who was not allied in interest with APR. When APR chose to bring its counterclaim in New York, APR accepted the risk that documents provided to this third-party mediator would be disclosed to GE, the party APR now faults for the very same seizure and alleged damages. Accordingly, and for the reasons set forth below, GE requests that the Court order disclosure of these materials.

## II.   FACTUAL BACKGROUND[1]

### a. Case Background

In October 2013, GE sold its GE Energy Rentals business—which manufactured and delivered various kinds of power plant equipment, including mobile gas turbine generators—to APR Energy plc. Dkt. No. 1 (Compl.) ¶ 11. In order to effect the sale, the parties entered into the October 22, 2013 Business Transfer Agreement (the "BTA") and the October 28, 2013 Master Supply Agreement (the "MSA"), among others. *See* Dkt. Nos. 41-1, 41-2. On April 18, 2019, GE sued APR Energy plc for breach of contract based on APR's refusal to pay certain resale fees owed to GE. *See generally* Compl. On May 28, 2019, APR filed two counterclaims against GE, one of which is the basis for the current discovery dispute. *See* Dkt. No. 22.

As part of the purchase of GE's Energy Rentals business, APR acquired a Contract for Rental of Power Generation Equipment and Supply of Associated Services, dated March 5, 2013 (the "Forge Contract"), by and between General Electric International, Inc. and Forge Group Power PTY ("Forge"). *See id.* ("Counterclaims") ¶¶ 22-23. Under the Forge Contract, GE had leased to Forge four gas turbines (the "Forge Turbines") in Australia. *Id.* Per publicly available records, on July 2, 2013, ANZ Fiduciary Services Pty Ltd ("ANZ") filed a registration statement on the Personal Property Securities Register in Australia reflecting a security interest against all

---

[1] For a more fulsome recitation of the background of this case, and the dispute at issue in this motion, see the Memorandum of Law in Support of GE's Motion to Compel (Dkt. No. 40).

of Forge's present and after-acquired property. *See* Dkt. No. 41-4. In February 2014, four months after the BTA, Forge filed for insolvency. Counterclaims ¶ 37. In February 2016, APR alleges, after APR had posted a $44 million security bond, an Australian court declared that Forge's interest in the Forge Turbines was superior to APR's interest. *Id.* ¶ 39. After its appeals were exhausted, APR asserts, Forge's receivers drew down on the $44 million bond. *Id.* ¶ 40.

In the counterclaim at the heart of this dispute (the "Forge Counterclaim"), APR alleges that GE breached the BTA in two respects. First, APR alleges that GE breached Section 3.08 of the BTA because, as of the Closing Date, GE did not have "good title" to the Forge Turbines "free and clear of all Liens." *Id.* ¶ 54. Second, APR alleges that GE breached Section 5.01(a) of the BTA by failing to act "in the ordinary course of business" which, APR alleges, would have included "(a) perfect[ing] a security interest in the Forge Turbines and (b) ensur[ing] that the title of the Forge Turbines was not encumbered by any security interests of third parties." *Id.* ¶¶ 55, 56. GE disputes these allegations. *See* Dkt. No. 25.

### b. The Baker McKenzie Litigation

Prior to entering into the BTA, APR retained Baker to conduct due diligence, including diligence related to the Forge Turbines. *See* Declaration of Jessica Falk Ex. 1, Filing #61207203, Baker McKenzie Litigation (the "Baker Compl.") ¶ 25. On August 31, 2017, APR brought a legal malpractice action against Baker alleging, among other things, that Baker failed to advise APR (1) that ANZ had recorded a security interest in July 2013 in the Forge Turbines and (2) regarding the consequences of that security registration. *Id.* ¶ 71. Further, APR blamed Baker for its defeat in the Australian court proceeding: in APR's words, that Baker had "fail[ed] to advise that [APR] should have pursued LCIA arbitration versus litigation in Australia." *Id.* at ¶ 71(q). APR alleged that "as a direct and proximate result of Baker's negligence" pertaining to the Forge Turbines, APR suffered damages of at least $44 million. *Id.* ¶ 72. APR and Baker

3

ultimately reached a mutual agreement to resolve their dispute, pursuant to which Baker paid ▮▮▮▮▮ to APR. *See* Falk Decl. Ex. 2, APR and Baker Settlement Agreement, APR0160725-736 at APR0160729.

### c. GE's Discovery Requests and First Motion to Compel

In light of APR's public allegations against Baker, GE requested that APR produce documents and information regarding the Baker McKenzie Litigation, including the documents produced during the litigation as well as any documents regarding the resolution of the matter.[2] In response, APR claimed that the information sought by GE was protected from discovery based on assertions of privilege and agreed to produce only the pleadings from the Baker McKenzie Litigation. GE then moved for an order compelling APR to produce documents responsive to its discovery requests. *See* Dkt. Nos. 39-41. Only after GE moved to compel did APR provide GE with a copy of the APR and Baker Settlement Agreement.

After the motion to compel was fully briefed, the Court entered Orders directing APR to file its privilege log with the Court as well as submit documents proportionally representative of the documents responsive to GE's document requests under seal for *ex parte*, *in camera* review. *See* Dkt. Nos. 64, 66. On April 15, 2020, APR filed its privilege log, which contained 12,688 entries, with the Court. *See* Dkt. No. 67-1. That filing was the first time APR's privilege log was shared with GE. In its privilege log, APR indicated that it was withholding documents on the basis of several asserted privileges, such as the attorney work product, attorney client communication, and mediation privileges. *Id.*

In its April 29, 2020 Order on GE's Motion to Compel, the Court found that "no mediation privilege exists under New York law, which governs this action and the instant

---

[2] Pursuant to Local Rule 5.1, the relevant requests, and APR's responses thereto, are attached to the Falk Declaration as Exhibit 3.

privilege dispute" and "APR's objections to GE's Document Request Nos. 1, 2 and 3, based on a mediation privilege, are overruled." Dkt. No. 72 ("Apr. 29 Order") at 16. APR was therefore ordered to produce documents previously withheld on the basis of mediation privilege.

On May 22, 2020, APR produced documents that had been withheld *exclusively* on the basis of mediation privilege. However, APR did not produce 28 documents for which it claimed either attorney client privilege, attorney work product protection, or both, in addition to mediation privilege (the "Disputed Documents")—despite that these documents, just like the others since produced, were disclosed to the third-party mediator. Falk Decl. Ex. 4 (privilege log entries for the Disputed Documents). The parties have met and conferred on this issue but have reached an impasse. Therefore, and in accordance with this Court's order, *see* Dkt. No. 85, GE respectfully requests that APR be compelled to produce the Disputed Documents.

### III. LEGAL STANDARD

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Motions to compel under Federal Rule of Civil Procedure 37 "are entrusted to the sound discretion of the district court." *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000). Courts reviewing whether to compel requested discovery "evaluate whether the benefit of the discovery sought is proportional to the burden of producing it, taking into account issues like access, importance, and available resources." *State Farm Mut. Auto. Ins. Co. v. Fayda,* No. 14-Civ.-9792, 2015 WL 7871037, at *4 (S.D.N.Y. Dec. 3, 2015).

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Relevance is "to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Mortg. Resol.*

*Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-Civ.-0293, 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016).  Once the requesting party demonstrates relevance, the "party resisting discovery has the burden of showing undue burden or expense." *Id.* at *3.

## IV. ARGUMENT

The Court should compel production of the Disputed Documents because APR is inappropriately asserting the attorney client or work product privilege, or both, with respect to materials previously provided to the third-party mediator in the Baker McKenzie Litigation.  By proffering the Disputed Documents to the mediator, APR waived any valid claim of attorney client privilege or work product protection over them and, as such, they must be produced.  Furthermore, the factors governing production under Rule 26 also weigh in GE's favor.

### a. APR Waived Any Attorney Client Privilege by Providing the Disputed Documents to the Mediator

Under New York law, the voluntary disclosure of a privileged communication to a third party generally waives the privilege.[3]  *See Ross v. UKI Ltd.*, No. 02 CIV. 9297 WHPJCF, 2003 WL 22319573, at *1 (S.D.N.Y. Oct. 9, 2003).  Nevertheless, "New York courts have recognized a narrow exception to this rule where privileged communications are shared with the client's agent."  *Id.*  In order to utilize this agency exception, and avoid waiver, the party asserting the privilege bears the burden to satisfy a two-pronged test.  *Id.* at *1.  <u>First</u>, it must demonstrate that the client had a "reasonable expectation of privacy under the circumstances."  *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, No. M8–85, 1999 WL 378337, at *3 (S.D.N.Y. June 10, 1999) (quoting *People v. Osorio*, 75 N.Y.2d 80, 84 (N.Y. 1989)).  Though a formal agency relationship is not required, the relationship between the client and the third party must be sufficiently close that the client's subjective expectation of confidentiality is reasonable.  *See id.*

---

[3] As this Court previously determined, New York law applies here with respect to issues of evidentiary privilege. *See* Apr. 29 Order at 13.

at *4.[4]  Second, the client "must establish that disclosure to a third party . . . was necessary for the client to obtain informed legal advice." Id. "[T]he 'necessity' element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." Id.

Under the first prong of the test, APR had no reasonable expectation of privacy under the circumstances.  It is axiomatic that courts routinely apply the confidentiality and privilege laws of the state in which the discovery dispute is held regardless of the parties' expectations at or the location of the mediation.  See, e.g., People v. PriceWaterhouseCoopers, LLP, 150 A.D.3d 578, 578-79 (N.Y. App. Div. 2017).  And, as this Court previously found, no mediation privilege exists under New York law.  See Apr. 29 Order at 13 ("New York courts decline to apply the confidentiality provisions in the Uniform Mediation Act as a matter of public policy.") (citation omitted).[5]  APR therefore knowingly risked disclosure of the Disputed Documents when it brought the Forge Counterclaim in this New York action.  Furthermore, it cannot be said that the

---

[4] The cases cited in APR's response to GE's letter seeking a pre-motion discovery conference (the "July 20 Response Letter") are not to the contrary. See Dkt. No. 84 at 1.  Each of those cases stands for the proposition that the scope of the privilege depends upon whether the client had a reasonable expectation of confidentiality under the circumstances.  See Stroh v. Gen. Motors Corp., 213 A.D.2d 267, 268 (N.Y. App. Div. 1995); Vill. of Kiryas Joel Loc. Dev. Corp. v. Ins. Co. of N. Am., No. 90 CIV. 4970 (JFK), 1992 WL 8207, at *1 (S.D.N.Y. Jan. 16, 1992); Osorio, 75 N.Y.2d at 84.

[5] APR attempts to rehash its previously asserted position that although New York has not adopted the Uniform Mediation Act, the confidentiality of submissions and statements made during mediation remains.  See Dkt. No. 84 at 2.  But the cases cited in support of this proposition are unpersuasive.  See NYP Holdings, Inc. v. McClier Corp., No. 601404/04, 2007 WL 519272, at 4 (N.Y. Sup. Ct. 2007) (opining that submissions made during mediations should remain confidential to ensure such information will not be introduced at the trial of the same dispute in the event the action is not settled and limiting the policy to "this court, and specifically . . . the Commercial Division" (citing local Commercial Division ADR Program rules)); Lynbrook Glass & Architectural Metals, Corp. v. Elite Assocs., Inc., 238 A.D.2d 319, 320 (N.Y. App. Div. 1997) (finding that a mediation report prepared as part of an attempt to settle the same dispute was protected from disclosure).

relationship between APR and the mediator was "sufficiently close" such that any expectation of confidentiality on behalf of APR was reasonable. Indeed, the mediator served not as an interested entity aligned with APR, but as a disconnected, third-party neutral.

With regard to the second prong, APR did not provide the Disputed Documents to the mediator to obtain "informed legal advice." Nor did APR proffer the Disputed Documents to the mediator in an effort to facilitate communications between APR and its counsel. *See, e.g.*, *Caruso v. Grace*, No. 11 CIV. 2353 SAS KNF, 2012 WL 2497274, at *6 (S.D.N.Y. June 27, 2012) (finding no attorney client privilege where guidance from third party did not serve to facilitate any communication in which client was seeking or obtaining legal advice); *cf. Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 27 N.Y.3d 616, 624 (N.Y. 2016) (finding that statements made to client's employees retain their privileged character where presence of such third parties is deemed necessary to enable attorney client communication); *Delta Fin. Corp. v. Morrison*, 820 N.Y.S.2d 745, 748-49 (N.Y. Sup. Ct. 2006) (noting that communications made to person serving as translator or interpreter in order to facilitate communications between lawyer and client do not waive attorney client privilege).

Accordingly, by providing the Disputed Documents to the mediator in the Baker McKenzie Litigation, APR waived any claim of attorney client privilege it may have been able to assert over those documents.

### b. APR Waived Any Work Product Privilege by Providing the Disputed Documents to the Mediator

Unlike the attorney client privilege, work product protection is not automatically waived merely because the material in question is disclosed to a third party. *See, e.g.*, *United States v. Adlman*, 134 F.3d 1194, 1200 n.4 (2d Cir. 1998). "Rather, the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for

8

potential adversaries to obtain the information." *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993) (citation omitted). Implicit in this analysis is the question of whether the third party "can or should be considered an adversary," *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004), though "[i]t is not necessary that the disclosure be made to an actual adversary, *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002). Accordingly, courts have generally held that there is no waiver of the work product privilege where the disclosing party and the third party share a common business or litigation interest. *See, e.g.*, *Cellco P'ship d/b/a Verizon Wireless v. Nextel Commc'n, Inc.*, No. M8–85, Civ.A. 03–725, 2004 WL 1542259, at *1 (S.D.N.Y. July 9, 2004). In other words, "where the third party to whom the disclosure is made is not allied in interest with the disclosing party or does not have litigation objectives in common, the protection of the doctrine will be waived." *Medinol, Ltd. v. Bos. Sci. Corp.*, 214 F.R.D. 113, 116 (S.D.N.Y. 2002); *see also Verschoth v. Time Warner*, No. 00 Civ. 1339(AGS), 2001 WL 546630, at *4 (S.D.N.Y. May 22, 2001) (ruling work product privilege was waived where defendant showed work product to third party whose "interests may not have been aligned" with defendant).

    Here, no argument can be made that the mediator was "allied in interest" or shared litigation or business objections in common with APR. To the contrary, the mediator was an independent third party whose neutrality remained essential to his role, and courts generally find that material shared with such individuals or entities constitutes a waiver of the work product protection. *See, e.g., Medinol*, 214 F.R.D. at 115-16 (finding waiver of work product protection where corporation had disclosed work product to its independent auditor who "must come to his own understanding of reasonableness, based on the evidence"); *99 Wall Dev. Inc. v. Allied World*

9

*Specialty Ins. Co.*, No. 18-CV-126 (RA) (KHP), 2019 WL 2482356, at *4 (S.D.N.Y. June 14, 2019) (finding waiver of work product protection where there was no assertion of common interest privilege shared by company and its reinsurers); *cf. Cellco*, 2004 WL 1542259, at *1 (deciding that defendant and its advertising agency shared a common business interest and therefore disclosure of an e-mail with legal advice did not waive work product privilege); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 221 n.6 (S.D.N.Y. 2001) (holding that there was no waiver of work product protection because business and public relations firm specializing in "litigation-related crisis management" shared common interest).

Thus, by providing the Disputed Documents to the mediator, APR waived any purported work product protection, and these materials must be produced.

### c. The Relevant Considerations Weigh in GE's Favor

The Rule 26 factors governing whether "the benefit of the discovery sought is proportional to the burden of producing it" weigh in favor of production. *State Farm*, 2015 WL 7871037, at *4. As relevance has been established, *see* Apr. 29 Order at 15-16, APR may avoid discovery only by showing undue burden or expense. *Mortg. Resol.*, 2016 WL 3906712, at *3. APR has already compiled and identified the 28 requested documents, Falk Ex. 4, and, per the Court's Order, Dkt. No. 64, will be submitting them for *in camera* review. Accordingly, there is no undue burden or expense by similarly providing the documents to GE. Finally, any confidentiality concerns are ameliorated by the protective order in this action. *See* Dkt. No. 31-2.

## V. CONCLUSION

For the foregoing reasons, GE respectfully requests that this Court grant its motion and compel APR to produce the Disputed Documents, together with such relief it deems just and proper.

Dated: New York, New York
July 28, 2020

                                  WEIL, GOTSHAL & MANGES LLP

                             By: */s/ Jessica L. Falk*

                                David J. Lender
                                Jessica L. Falk
                                Nathaniel F. West
                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, NY  10153
                                Tel:  (212) 310-8000
                                Fax:  (212) 310-8007
                                david.lender@weil.com
                                jessica.falk@weil.com
                                nate.west@weil.com

                                *Attorneys for General Electric Company*

## CERTIFICATE OF SERVICE

  I hereby certify that on July 28, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

<i>/s/ Jessica L. Falk</i>